UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.E.K. CONSULTING LLC,<br><br>                    Plaintiff,<br><br>           -v.-<br><br>AMICUS CAPITAL PARTNERS, LLC,<br><br>                    Defendant. | 19 Civ. 10648 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

This Order resolves the request for attorneys' fees filed by counsel for Plaintiff L.E.K. Consulting LLC.  While the request is unopposed and seemingly straightforward, its resolution requires examination of the unusual procedural history of this case.  For the reasons set forth in the remainder of this Order, the Court awards attorneys' fees in the amount of $13,500 and costs of suit in the amount of $226.60.  Separately, this Court orders that judgment be issued in the aggregate amount of $570,664.99, comprising $472,250 in damages, $84,688.39 in accrued interest to date, $13,500 in attorneys' fees, and $226.60 in costs of suit.

## PROCEDURAL BACKGROUND

Plaintiff filed its complaint on November 18, 2019, raising contract and quasi-contract claims stemming from its provision of consulting services to Defendant Amicus Capital Partners, LLC.  (Dkt. #1 (the "Complaint")).  Defendant was served with the Complaint on December 28, 2019, and its response was due on or before January 21, 2020.  (Dkt. #7).  Defendant did not respond by that date, and Plaintiff sought a certificate of default on January 29

and 30, 2020. (Dkt. #8-11). The Clerk of Court issued a certificate of default on January 31, 2020. (Dkt. #12).

By letter motion dated February 12, 2020, Plaintiff asked the Court to adjourn the initial pretrial conference in the matter, which had been set for February 20, 2020, so that Plaintiff could either discuss settlement with Defendant or follow through on its plans to move for a default judgment. (Dkt. #13). The Court granted Plaintiff's motion, and directed Plaintiff "to either inform the Court of a settlement in this action or file for an entry of default judgment on or before March 30, 2020." (Dkt. #14). The following week, on February 17, 2020, Plaintiff submitted a declaration from its counsel in support of the entry of a default judgment, as well as a proposed order to show cause and a proposed judgment. (Dkt. #15-17). On February 18, 2020, the Court issued an Order to Show Cause why default judgment should not be entered against Defendant, and set a hearing in the matter for April 3, 2020. (Dkt. #18). The hearing was subsequently adjourned until April 6, 2020 (Dkt. #20), and then converted to a telephonic hearing because of the ongoing COVID-19 pandemic (Dkt. #22).

Counsel for Defendant appeared at the April 6, 2020 hearing, and after hearing from both sides, the Court directed the parties to file a joint letter concerning the status of settlement discussions within two weeks. (Minute Entry for April 6, 2020). One week later, on April 13, 2020, Plaintiff requested that the Court reschedule the show-cause hearing, expressing concerns that Defendant "[ha]s engaged in delay tactics so that it can continue to avoid the

substantial, undisputed debt." (Dkt. #23 at 1). The Court rescheduled the hearing for April 29, 2020. (Dkt. #24). That day, the parties jointly advised the Court of a settlement in principle of the matter, and requested the Court file an order of discontinuance that specified a 77-day period within which the matter could be restored to the Court's active docket; that day was sought specifically because one of the terms of the parties' settlement agreement was a lump-sum payment from Defendant to Plaintiff by noon on July 15, 2020. (Dkt. #26; Minute Entry for April 29, 2020).

Unfortunately, Defendant did not comport with its obligations under the settlement agreement, and on July 15, 2020, Plaintiff again requested that the Court restore the matter to its active calendar and enter a default judgment against Defendant. (Dkt. #27). The Court issued an order reopening the case and scheduling a show-cause hearing for August 14, 2020. (Dkt. #28). At the August 14, 2020 hearing, counsel for Defendant represented that her client had no objection to the entry of a default judgment. (Dkt. #31 at 4 (transcript of August 14, 2020 hearing)). What the parties disputed, however, was whether the default judgment damages figure was the sum of the outstanding fees and costs listed in Plaintiff's original default judgment submissions or the figure listed in the parties' settlement agreement. (*Id.* at 5-10). After hearing argument from the parties, the Court ordered supplemental briefing on the issue of the proper damages figure for the default judgment. (*Id.* at 16-18).

The parties filed their submissions on September 4, 2020, and the Court issued an order resolving the damages component of the default judgment

3

figure on September 15, 2020.  (Dkt. #33-36).  *See L.E.K. Consulting LLC* v. *Amicus Cap. Partners, LLC*, No. 19 Civ. 10648 (KPF), 2020 WL 5535191 (S.D.N.Y. Sept. 15, 2020).  In relevant part, the Court found that "the settlement agreement provides the relevant amount for the default judgment," because that document was plainly intended by the parties to supersede the original consulting agreement.  *Id.* at *1.  Accordingly, the Court ordered that Plaintiff be awarded $475,000 in damages, as well as interest at 18% per annum, the rate specified in the settlement agreement.  *Id.* at *2.[1]  Because the settlement agreement also specified that the aggrieved party would be entitled to recover attorneys' fees and costs relating to the enforcement of the judgment, the Court scheduled briefing on that issue.  *Id.*  Plaintiff submitted its fee petition materials on October 13, 2020 (Dkt. #37), as well as a supplemental notice on January 22, 2021 (Dkt. #38).  Defendant filed no opposition to Plaintiff's request.

## DISCUSSION

### A.     Applicable Law

Under the American Rule, there is a presumption that each party is responsible for its own attorneys' fees unless a statute or contract provides otherwise.  *See Local 1180, Commc'ns Workers of Am., AFL-CIO* v. *City of New York*, 392 F. Supp. 3d 361, 377 (S.D.N.Y. 2019).  Of particular significance to the instant motion, the American Rule provides that "parties may agree by

---

[1]  Plaintiff advised the Court that "on January 4, 2021, [Defendant] paid $750 and its principal, Colin Forde, separately paid $1,500 to [Plaintiff]," and that these were the only credits against the judgment.  (Dkt. #38 at 1).

4

contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *Id.* (citing *U.S. Fid. & Guar. Co.* v. *Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)).  Contract provisions addressing the recovery of attorneys' fees are valid and enforceable under New York law, and courts "will order the losing party to pay whatever amounts have been expended … so long as those amounts are not unreasonable." *F.H. Krear & Co.* v. *Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987); *accord Metro Found. Contractors, Inc.* v. *Arch Ins. Co.*, 551 F. App'x 607, 610 (2d Cir. 2014) (summary order); *NetJets Aviation, Inc.* v. *LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008).

Attorneys' fees are typically awarded by determining the "'presumptively reasonable fee,'" often (if imprecisely) referred to as the "lodestar." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010).  This fee is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166.  Courts may, only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly* v. *City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Millea*, 658 F.3d at 167).  The Second Circuit has recognized that a district court exercises

5

considerable discretion in awarding attorneys' fees.  *See Millea*, 658 F.3d at 166; *see also Arbor Hill*, 522 F.3d at 190.

The Second Circuit clarified the process by which a district court determines the reasonable hourly rate in *Lilly* v. *City of New York*, a case involving a fee-shifting statute:

> [T]he district court, in exercising its considerable discretion, [should] bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190).[2]  In this setting, "the district court does not play the role of an uninformed arbiter but may look

---

[2] The twelve factors enumerated in *Johnson* are: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the level of skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstances; (viii) the amount involved in the case and results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989)).

to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

"To determine the reasonable hourly rate for each attorney, courts must look to the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Heng Chan* v. *Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (quoting *Gierlinger* v. *Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). The Second Circuit's "forum rule" requires courts to "generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 493 F.3d at 119).

When determining the reasonable number of hours, a court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley* v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted). In addition, a court should examine the hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994) (per curiam). The Court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

7

In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Samms* v. *Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted).  A court also retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming the fat."  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987).

### B.  Reasonable Attorneys' Fees

Daniel Marx, counsel for Plaintiff, submitted a spreadsheet that detailed the attorneys' fees billed to Plaintiff and the costs incurred in pursuing enforcement of the parties' settlement agreement.  The fees figure is $13,500, reflecting 22.1 hours billed by Mr. Marx and 0.4 hours billed by his partner, William Fick, each at a $600 hourly rate, spanning the period from January 29, 2020, when counsel began to draft Plaintiff's motion requesting a default judgment, through September 16, 2020, the day after the Court's order concerning the amount of the default judgment was issued.  (Dkt. #37-1).

8

Beginning with the determination of the appropriate hourly rate, the Court observes that Plaintiff's submission is light on the details of Mr. Marx's experience, but it has been able to determine from his firm's website and other publicly available sources that he is a name partner at the firm Fick & Marx LLP; that he received his undergraduate and law degrees from Yale University, obtaining the latter in 2002; that he clerked for judges in the Eastern District of New York and the Second Circuit Court of Appeals; and that he worked at three prominent law firms before leaving, as a partner, to start his own boutique firm. *See* Fick & Marx LLP, *Daniel N. Marx*, http://www.fickmarx.com/who_we_are_marx.html (last visited Sept. 13, 2021); *Boston Litigation Firm Founded by YLS Alums*, https://law.yale.edu/yls-today/news/boston-litigation-firm-founded-yls-alums (last visited Sept. 13, 2021). Information regarding Mr. Fick is in similarly short supply in Plaintiff's submission, but the Court understands from publicly available materials that he is also a name partner at Fick & Marx LLP; a graduate of Yale College and Yale Law School, the latter in 2001; a former law clerk to former United States District Judge Nancy Gertner; and a former federal public defender and civil litigation associate. *See* Fick & Marx LLP, *William W. Fick*, http://www.fickmarx.com/who_we_are_fick.html (last visited Sept. 13, 2021).

The Court has written and reviewed many attorneys' fees decisions over the years, and it recognizes that there has not been perfect consistency in assessing the reasonableness of attorneys' rates. *See, e.g.*, *Tessemae's LLC* v. *Atlantis Cap. LLC*, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *4 (S.D.N.Y.

June 27, 2019) ("Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable."). Focusing on recent decisions from this District involving breach of contract actions, the Court concludes that a rate of $600 for each of Mr. Marx and Mr. Fick is reasonable on the specific facts of this case. *See, e.g., Glob. Brand Holdings, LLC* v. *Accessories Direct Int'l USA, Inc.*, No. 17 Civ. 7137 (LAK) (SLC), 2020 WL 9762874, at *7 (S.D.N.Y. May 29, 2020) ("With respect to the reasonableness of the partner rate requested, other courts in this district awarding attorneys' fees in straightforward breach of contract actions have found partner rates in the range of $375 to $650 to be reasonable.") (collecting cases); *KCG Holdings, Inc.* v. *Khandekar*, No. 17 Civ. 3533 (AJN) (GWG), 2020 WL 7053229, at *5 (S.D.N.Y. Dec. 2, 2020) ("We note that a number of cases have commonly found partner rates in the range of $350 to $650 per hour to be reasonable in breach of contract suits.") (collecting cases), *report and recommendation adopted sub nom. KCG Holdings* v. *Khandekar*, No. 17 Civ. 3533 (AJN), 2021 WL 623927 (S.D.N.Y. Feb. 17, 2021); *cf. Carrington* v. *Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5758916, at *12, 14 (S.D.N.Y. Sept. 28, 2020) (finding to be reasonable rates in complex commercial litigation of $900, $850, and $725).

In adopting the hourly rate requested by Mr. Marx and Mr. Fick, the Court has focused on certain factors, including counsel's experience, the quality of the written and oral submissions, and the successful result that they obtained. *See Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d

Cir. 2008) ("The most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." (cleaned up)).  In addition, the Court has considered the fact that Defendant has put forth no opposition to the rate sought by either attorney.  *See generally HRB Pro. Res. LLC* v. *Bello*, No. 17 Civ. 7443 (KMK), 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) ("Notably, Respondent has not contested the propriety of these rates.  Finding no reason to question the reasonableness of the requested rates in light of counsels' extensive experience and the prevailing rates in the Southern District of New York, the Court concludes the rates sought by the respective attorneys here are reasonable.") (collecting cases); *Balu* v. *City of New York*, No. 12 Civ. 1071 (KPF), 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (explaining that "the [c]ourt will not adjust the rate sought" because Respondent "do[es] not challenge the reasonableness of the hourly rate [the Petitioner's attorney] seeks").

The Court next considers the reasonable number of hours expended.  Here, too, the Court adopts the figure of 22.5 hours proffered by Plaintiff's counsel, of which 22.1 hours were billed by Mr. Marx.  In arriving at its decision, the Court reviewed counsel's contemporaneous billing records with care.  It observed certain tasks for which Mr. Marx billed that could arguably have been performed at a lower hourly rate by a more junior attorney.  However, the Court has determined not to reduce the hours sought because of several countervailing factors, including the limited time period for which fees are sought, the conservative billing entries for each attorney, and, perhaps

most importantly, the fact that most of the time billed was necessitated by the push and pull of Defendant's ultimately abortive settlement overtures. Accordingly, the Court awards 22.5 hours at a rate of $600 per hour, for a total attorneys' fees figure of $13,500.

### C.     Reasonable Costs Expended

Finally, the Court considers the issue of the costs of suit.  "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted); *accord Fisher* v. *SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" (quoting *Reichman* v. *Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987))); *see generally Abraham* v. *Leigh*, No. 17 Civ. 5429 (KPF), 2020 WL 5512718, at *12 (S.D.N.Y. Sept. 14, 2020).  Here, Plaintiff seeks only the costs of service of the default judgment materials.  These costs are fairly traceable to Defendant's conduct and the Court awards them, for a total costs figure of $226.60.

## CONCLUSION

The Court GRANTS Plaintiff's motion for attorneys' fees and costs as follows:  It awards attorneys' fees in the amount of $13,500, and costs in the amount of $226.60.

Accordingly, for the reasons set forth in this Order and this Court's prior Order of September 15, 2020, the Court ORDERS that judgment be entered

against Defendant in the following amounts: **$472,250** in damages; **$84,688.39** in interest from the date of the Court's September 15, 2020 Order to the date of this Order; continuing interest at a rate of 18% per annum from the date of this Order forward; **$13,500** in attorneys' fees; and **$226.60** in costs of suit, for a total of **$570,664.99**.

    SO ORDERED.

Dated:   September 14, 2021
            New York, New York

                                                  KATHERINE POLK FAILLA
                                             United States District Judge